## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KINTAD PHILLIPS  (# 294348)**                                    **CIVIL ACTION**

**VERSUS**

**DAVID BRUNER, CADET, ET AL.**                                **NO. 16-0624-BAJ-EWD**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 9, 2017.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KINTAD PHILLIPS (# 294348)**                                        **CIVIL ACTION**

**VERSUS**

**DAVID BRUNER, CADET, ET AL.**                                **NO. 16-0624-BAJ-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Defendants' Motions to Dismiss (R. Docs. 11 and 12). These Motions are not opposed.

*Pro se* Plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Cadet David Bruner, Capt. Kenny Jones, Major Carl Smith, Ass't Warden Ray Vittorio and Ass't Warden Kevin Benjamin, complaining that his constitutional rights were violated on December 8, 2015 when Defendants failed to protect Plaintiff from harm at the hands of a co-inmate who was a known enemy of Plaintiff on that date.[1]

---

1   An attempt by the United States Marshal's Office to serve Defendant David Bruner has proven unsuccessful, specifically because this Defendant is no longer employed by the State of Louisiana and, as a result, service of process was not accepted on his behalf at the offices of the Louisiana Department of Public Safety and Corrections. *See* R. Doc. 8. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 90 days of commencement of an action is justification for dismissal of that defendant from the proceeding. Although a *pro se* inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987). In the instant case, after having been notified that service had not been effected against the named Defendant, through receipt of the Marshal's Service Return on or about January 17, 2017 (R. Doc. 8), Plaintiff has neither propounded discovery nor taken any other action to determine the last

In the instant Motions, Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's claim asserted against them in their official capacities for monetary damages.[2]  In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id*. at 25.  Accordingly, Plaintiff's claim asserted against Defendants in their official capacity for monetary damages is subject to dismissal.  In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacities remains theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.  *Id*. at 29.  In addition, a claim for injunctive relief asserted against state officials in their official capacities is not barred by the Eleventh Amendment because such a claim is also not seen to be a claim asserted against the state.  *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur.

---

known address of the unserved Defendant so that he might be served.  It is appropriate, therefore, that Plaintiff's claim asserted against Defendant David Bruner be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon him.

2      Whereas Plaintiff's Complaint is unclear as to whether he is suing Defendants in their individual or their official capacities, the Court liberally interprets Plaintiff's Complaint as naming Defendants in both capacities.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (instructing that the pleadings of *pro se* plaintiffs should be interpreted liberally).

2d *Civil Rights* § 101.

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed pro se is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however,

must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges that on December 8, 2015, he was restrained by Cadet David Bruner in preparation for being transferred to another location within the prison. According to Plaintiff, after he was restrained and allowed to exit his cell, he followed Cadet Bruner down the tier but was then grabbed through the bars by a co-inmate in another cell, Roy Walker, who fastened Plaintiff's waist belt to the bars of his cell and began to choke Plaintiff. Plaintiff complains that Cadet Bruner failed to take immediate action to intervene but instead activated a security beeper, whereupon Defendants Jones and Smith arrived on the tier. At that time, Cadet Bruner allegedly cut Plaintiff's waist belt free from the bars of the co-inmate's cell, and Plaintiff was escorted off the tier by Defendants Jones and Smith. Plaintiff complains that co-inmate Walker had been placed on Plaintiff's Enemy List less than a year previously because of a fight between them and, under prison rules, was not supposed to be housed in Plaintiff's vicinity. Plaintiff further alleges that only days prior to this incident, he had informed Defendant Smith of the potential danger posed by co-inmate Walker, and Defendant Smith had merely responded that he would ensure that the two inmates did not come into contact. Finally, Plaintiff complains that when he subsequently pursued a prison grievance relative to the referenced incident, Defendants Vittorio and Benjamin responded to his grievance with falsified statements that asserted that Plaintiff had not been cut free from the bars of the co-inmate's cell.

In response to Plaintiff's allegations, Defendants make the assertion that they are entitled

to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that any of them have participated in a violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' Motion to Dismiss should be granted. First, as to Defendants Vittorio and Benjamin, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*,

718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named Defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate Plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing principles, it appears clear that Plaintiff has failed to allege facts sufficient to support a claim of wrongdoing on the part of Defendants Vittorio or Benjamin. Specifically, the only claim asserted by Plaintiff relative to these Defendants is that they provided false or inaccurate statements in their responses to Plaintiff's administrative grievance submitted in connection with the events of December 8, 2015. This allegation is not sufficient to support a finding of liability on the part of these two supervisory officials. Plaintiff does not allege, for example, that either of these defendants was present at the time of the incident complained of, that they had any involvement in determining Plaintiff's housing assignment or that of the offending co-inmate, or that they had any personal knowledge or warning of an impending attack by the co-inmate. Thus, there is no factual basis for a finding of personal liability in connection with the events alleged. Further, the mere fact that these Defendants may have provided false, inaccurate

or misleading statements in their responses to Plaintiff's administrative grievance does not amount to a constitutional violation. The law is clear in this regard that any alleged failure to investigate or properly respond to a prisoner's administrative grievance is not a constitutional violation, and no liability may attach as a result of such failure. *See Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). Nor is an inmate entitled to a fair or favorable response or result in connection with his administrative grievances. *Id*. Thus, Plaintiff may not be heard to complain in this case regarding the manner in which his administrative proceedings were investigated, conducted or resolved, and there is no constitutional right inherent in such a claim. Accordingly, Plaintiff's claims asserted against Defendants Vittorio and Benjamin should be dismissed.

Turning to Plaintiff's claim asserted against the remaining Defendants, Kenny Jones and Carl Smith, Plaintiff first alleges as to these Defendants that they were summoned to the cell tier by the beeper activation of Cadet Bruner and assisted in stopping the altercation between the two inmates and in escorting Plaintiff off the tier. The Court finds no basis for liability in this conduct. There can certainly be no liability for the conduct of Defendants in acting to stop the dispute and to assist Plaintiff.

Plaintiff next alleges that Defendant Smith was informed by Plaintiff several days before the incident that co-inmate Walker was on Plaintiff's Enemy List and should not be housed in Plaintiff's vicinity. According to Plaintiff, Defendant Smith responded only by assuring Plaintiff that the two inmates would be prevented from coming into contact with each other.

Although the issue is a closer one, the Court similarly concludes that Plaintiff has failed to allege facts sufficient to support a failure-to-protect claim against Defendant Smith. In this regard, the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002), *citing*

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994). *See also Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003), *citing Farmer v. Brennan, supra*, 511 U.S. at 834. Prison officials may be found liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *Id*. A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Id*. "Deliberate indifference" requires a showing of a conscious or callous indifference to an inmate's rights and has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan, supra*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Further, the deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

With regard to Plaintiff's allegation that the offending co-inmate was identified as Plaintiff's enemy on Plaintiff's Enemy List and that Plaintiff had informed Defendant Smith of this several days before the incident, the Court concludes that there is an insufficient basis for liability as to Defendant Smith. Accepting for purposes of the instant Motion to Dismiss that Plaintiff in fact alerted Defendant Smith to the enemy status of co-inmate Walker, it does not appear from Plaintiff's allegations that Defendant Smith consciously and callously disregarded the potential risk of danger. Instead, Plaintiff concedes that Defendant Smith responded to Plaintiff's information by advising Plaintiff that he would "ensure" that the two inmates would not come into contact. Whereas this response by Defendant Smith may not have fully addressed the immediate

potential danger to Plaintiff's safety,³ it is clear from Plaintiff's own admissions that, in any event, he was being transferred to another housing unit on the very date and time that the incident with the co-inmate occurred. Plaintiff concedes that when the incident occurred, he had been placed in restraints and allowed out of his cell by Cadet Bruner for that very purpose. Whereas it is unclear from the record whether Plaintiff's relocation was the result of his reported enemy concerns or was initiated by Defendants Smith or Jones, the potential danger to Plaintiff was being resolved by his relocation on that date, and he had not been attacked or injured during the intervening period, presumably. Accordingly, any alleged delay in taking action to protect Plaintiff's safety does not appear to have been a cause of the resulting attack. Finally, and most importantly, whereas Plaintiff alleges in the Complaint that co-inmate Walker "began choking" him after grabbing and attaching Plaintiff's waist belt to the cell bars, Plaintiff makes no allegation that he sustained any injury whatever as a result of the incident, much less injury that warranted medical care or that persisted beyond the occurrence of the incident itself. Thus, Plaintiff does not appear to have suffered actual harm as a result of the incident. The Court further notes in this context that Plaintiff does not pray for compensatory damages in his Complaint, and only asks for "punitive declaratory monetary damages," suggesting that he did not sustain injury as a result of

---

3   The continued assignment of Plaintiff to a cell tier where a known enemy was also housed may have been in violation of prison rules or policies instituted for the purpose of protecting inmates from harm. Notwithstanding, the law is clear that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process." *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006), *quoting Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Jackson v. Cain*, 864 F.2d 1235, 1253 (5th Cir. 1989). *See also Woodard v. Andrus*, 419 F.3d 348, 1252-53 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights"). Accordingly, to the extent that Defendants may be found to have violated prison rules or regulations on December 8, 2015, this conduct does not rise to the level of a constitutional violation cognizable under § 1983.

the incident complained of. Finally, the Court notes that the administrative grievance that Plaintiff submitted to prison officials relative to the incident, *see* R. Doc. 13-1, pp. 20-21, contains no reference to Plaintiff having been choked or to Plaintiff having sustained any injury.

Based on the foregoing, the Court is unable to conclude that there is a sufficient factual basis alleged for the imposition of liability against Defendants. In this regard, not every act of wrongdoing within the walls of a prison rises to the level of a constitutional violation or warrants the intervention of the Court. In the absence of any allegation of actual harm or injury resulting from the incident complained of, Plaintiff's allegations do not assert a claim of sufficient magnitude to justify a potential finding of liability or rise above the level of speculation so as to state a claim for relief cognizable in this Court. *See Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (dismissing an inmate's Eighth Amendment failure-to-protect claim for failure to allege physical injury). Accordingly, Defendants' Motions to Dismiss should be granted, dismissing Plaintiff's claims asserted against them.

## RECOMMENDATION

It is recommended that Plaintiff's claims asserted against Defendant David Bruner be dismissed, without prejudice, for failure of Plaintiff to serve this Defendant within the time allowed by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the Motions to Dismiss of the remaining Defendants, Kenny Jones, Carl Smith, Ray Vittorio and Kevin Benjamin (R. Docs. 11 and 12) be granted, dismissing Plaintiff's claims asserted against these Defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on June 9, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**